The Long & Allstatter Co. et al. *v.* Willis et al.

(Decided November 12, 1935.)

*Messrs. Harmon, Colston, Goldsmith & Hoadly, Messrs. Williams, Sohngen, Fitton & Pierce* and *Messrs. Pogue, Hoffheimer & Pogue,* for plaintiff in error The Long & Allstatter Company.

*Mr. Brandon R. Millikin,* for plaintiff in error Beeler, trustee.

*Mr. Coleman Avery,* for defendant in error Willis.

Matthews, J. This is a proceeding in error to the Court of Common Pleas of Hamilton county, and presents for review certain efforts to enforce the final judgment for money previously rendered. That judgment having been affirmed by the highest court having jurisdiction, the sole issue now is as to the regularity

and validity of the means resorted to in the process of securing, or attempting to secure, its satisfaction.

On June 10, 1932, an execution was issued. On May 3, 1934, the plaintiff filed a motion for an order setting "a time and place for hearing and for defendants to appear and file any motions or pleadings." On September 27, 1934, the court entered upon its journal the following order:

"Upon motion of the plaintiff filed herein on May 3rd, 1934, to which reference is hereby made the court hereby sets for hearing upon Wednesday, October 3rd, 1934, at 9 o'clock a. m. the question referred to in said motion as to whether any of the items of property of The Long & Allstatter Company, levied upon by the Sheriff of Butler county, in so far as they are included in the inventory of said Sheriff, filed herein with his return of the fourth order of sale, are as a matter of fact and law not personal property but fixtures and therefore part of the realty.

"The Court hereby orders the defendant, The Long & Allstatter Company, Ralph K. Beeler, Trustee in Bankruptcy of The Long & Allstatter Company and also The First National Bank & Trust Company of Hamilton, Ohio, and The Fifth Third Union Trust Company of Cincinnati, Ohio, to appear before this Court on said 3rd day of October, 1934, at 9 o'clock a. m. and to file such motions or pleadings as they may see fit and offer such evidence as they may see fit which is competent and relevant on said question, in order that the matter may be determined by this court."

The parties named in this order appeared specially and moved to quash service of this order on the ground that the court had no jurisdiction of the person or the subject-matter. The motions of The Long & Allstatter Company and Ralph K. Beeler, trustee in bankruptcy of The Long & Allstatter Company, were overruled. The motions of the others were sustained.

No pleadings of any sort were filed, but thereafter

the court proceeded to hear evidence as to the character of the property levied upon and the manner of its attachment to the land, and, on January 26, 1935, journalized its findings of facts from this evidence and stated separately its conclusions of law in accordance with the request of counsel for The Long & Allstatter Company.

On the same day the court spread upon its journal a finding that certain property was personalty and certain other property was realty, and as to the former the court ordered "said sheriff to proceed to sell the same as such," and as to the latter, the court found that it was not "subject to sale as personal property under the judgment, execution and orders of this court."

While counsel for The Long & Allstatter Company and its trustee participated in the hearings, they claimed at all times that the court was completely lacking in jurisdiction, and in terms refrained from entering the appearance of their clients generally in the proceeding. It is claimed that notwithstanding their disclaimer, their conduct amounted to a general appearance, but the view we take of this case makes it unnecessary for us to determine this question of jurisdiction of the person.

While no pleadings were filed we learn from the statements of counsel incorporated in and occupying the first forty-two pages of the bill of exceptions, that the sheriff had made a levy under the execution upon certain property, and a controversy arose as to the right to levy upon certain fixtures as personal property. The sheriff filed a list or inventory of the property levied upon. All the proceedings thereafter taken were for the purpose of determining what the sheriff should do in the light of this controversy.

The Long & Allstatter Company filed a voluntary petition in bankruptcy in the United States District Court for the Southern District of Ohio, and was

adjudged a bankrupt on the 4th day of April, 1933, and, thereafter, Ralph K. Beeler was appointed trustee in bankruptcy. On August 26, 1933, Beeler as trustee filed a plenary action in the United States District Court for the Southern District of Ohio against the sheriff for an injunction to restrain him from selling as personal property the fixtures, on the ground that the levy upon them as personal property was invalid; and a temporary injunction was granted. The jurisdiction of the United States District Court to hear and determine this case was sustained in *Schumacher* v. *Beeler,* 293 U. S., 367, 79 L. Ed., 433, 55 S. Ct., 230, and the temporary injunction was operative at the time of the hearing of the case.

It appears from the elaborate statement of counsel that much litigation has developed in the effort to enforce the judgment in this case, but the foregoing statement is sufficient for the purposes of this proceeding in error.

By Section 4 of Article IV of the Ohio Constitution it is provided that the jurisdiction of the Courts of Common Pleas "shall be fixed by law." They can only hear such cases as they are authorized to hear by the law-making body, and their judgments are enforceable only by such writs and methods as are provided by that body. It is not doubted that by Section 11215, General Code, the Legislature has conferred upon Common Pleas Courts original jurisdiction to hear and decide the controversy between the original parties, set forth in the pleadings, showing a claim made by the plaintiff against the defendant and a denial of liability by it. But the court has long since decided that controversy and placed it in the form of a judgment in favor of the plaintiff against the defendant. Having done so — having decided and the decision having become final — the judicial function ceased in that case. The case was no longer pending. The enforcement of the judgment was no part of the judicial function. That duty de-

volved upon the executive department and the duty was ministerial and not judicial in its nature. The Legislature has provided by law for the ministerial officers and the process for the enforcement of judgments. These are available to the judgment creditor, and it is not in the power of the court to withhold, suspend, or modify them, unless the Legislature has conferred such authority. *Municipal Court of Toledo* v. *State, ex rel. Platter,* 126 Ohio St., 103, 184 N. E., 1; *Ex Parte United States,* 242 U. S., 27. We have been cited to no legislative authority. We think it equally sound that the court cannot invent and apply any new or different process for the enforcement of its judgments than that provided by the legislative department. The power, incidental to the judicial power, to make rules and otherwise provide for the effective exercise of the judicial power, and to enforce its judgments, is not so extensive as to transcend legislative provisions to that end. The Legislature has provided the writ of execution for the enforcement of money judgments, and, in aid of that writ, by Section 11768, *et seq.,* General Code, the summary proceeding in aid to discover assets may be resorted to. Neither the proceeding under the writ nor the proceeding in aid of execution gives the court power to decide any issue that may arise between the executing officer and a third person. *Welch* v. *Pittsburgh, Ft. Wayne & Chicago Ry. Co.,* 11 Ohio St., 569, at 573; *White* v. *Gates,* 42 Ohio St., 109 at 112. In obedience to this rule, The Fifth-Third Union Trust Company and The First National Bank & Trust Company were dismissed from this proceeding. If the lien of the judgment or the levy is upon property subject to other claims, or if assets not subject to execution exist, the Legislature has provided by Section 11760, General Code, that the judicial power may be again invoked to decide the rival claims in order that the judgment in the main action may be satisfied.

If the sheriff under color of the writ levies upon property not belonging to the judgment debtor, the writ does not protect him, and the injured person may invoke the judicial power for redress.

And to protect the sheriff in executing the writ the Legislature has placed it in his power to seek the advice of the prosecuting attorney, and to require indemnity.

But it is claimed that the power of the court over its own process is authority for this proceeding.

The writ of execution is provided by the Legislature and is not strictly speaking the process of the court. Having decided the case and entered judgment, the court has no power to withhold or suspend execution except to the extent authorized by the Legislature. As we view it what the court did was not to control its process, but to foreclose or adjudicate a new case or controversy that had arisen, or might arise, by reason of the action of the sheriff in executing the writ. We know of no authority for this.

It is argued that the seizure of the property by the sheriff converted the case into a proceeding *in rem.* This could not be, for the reason that there was no proceeding pending. The only proceeding was the original action *in personam,* and it had reached the judicial repose of a final judgment.

Counsel have cited certain cases. *Wayman* v. *Southard,* 10 Wheat. (U. S.), 1, involved the question of whether Congress had the power under the constitution to confer or delegate power to the court to provide its own writs, and all the court held was that it was not an unconstitutional delegation of legislative power. The court said at page 43: "It will not be contended, that these things might not be done by the legislature, without the intervention of the courts; yet it is not alleged that the power may not be conferred on the judicial department." And, at page 25: "It is true, that if, after the service of an execution, a question

respecting the legality of the proceeding should be brought before the court by a *regular suit,* there would be a trial at common law * * *.'' *Riggs* v. *Johnson County,* 6 Wall. (U. S.), 166, was not a summary action in the case in which the judgment had been rendered, but was an independent action in mandamus to compel the county to levy a tax to pay the judgment. *Bayne* v. *Brewer Pottery Co.,* 90 F., 754, was a suit in equity, and, as is well known, the legislative department has left to courts of equity the power to mould their decrees to fit the equity of the case and to enforce them by coercion of the person.

*Dickey* v. *Turner,* 49 Fed. (2d), 998, was an independent action to enjoin the enforcement of a judgment rendered in another action in order that the plaintiff might be permitted the advantage of a set-off because of the insolvency of the judgment creditor.

*State, ex rel. Ellis, Atty. Genl.,* v. *Board of Deputy State Supervisors,* 70 Ohio St., 341, 71 N. E., 717, did not involve the power of the court after it had rendered final judgment. The question was whether the Supreme Court had power to issue a temporary restraining order to preserve the *status quo* pending the final determination of the right to an office in an action in *quo warranto.*

The cases cited do not sustain the validity of this summary proceeding. In so far as they are pertinent, they indicate a contrary conclusion.

After The Fifth-Third Union Trust Company and The First National Bank & Trust Company were dismissed from this proceeding, there were no adversaries except the trustee in bankruptcy of the defendant, and the sheriff, unless it could be said that notwithstanding the final judgment the original litigants still answered that description which of course they did not. The original issues had been decided. All the defendant's property, whether real, personal or mixed, was subject to the judgment. The trustee in

bankruptcy could, at most, only represent the general creditors. Their rights could, perhaps, be affected by a determination that certain fixtures were still personal property, and, therefore, subject to the lien created by the levy and to sale under the writ. Whatever the trustee did or failed to do could not jeopardize the proprietary rights of other lienholders. The only possible issue then was between the trustee and the sheriff. But this issue was involved in *Schumacher* v. *Beeler,* pending in the United States District Court, and this fact was brought to the attention of the Common Pleas Court. Not only comity, but the mandate of the United States Constitution that "This Constitution * * * shall be the supreme law of the land; and the judges of every state shall be bound thereby," required the state court to yield whatever jurisdiction it might otherwise have to the paramount jurisdiction of the Federal court.

In *Schumacher* v. *Beeler, supra,* the Supreme Court of the United States has decided that the United States District Court has jurisdiction to the extent that these fixtures are real estate. But it is said that its jurisdiction depends, under the act of Congress, on whether these fixtures are to be regarded as realty, and that until that issue is determined it cannot be known whether that court has jurisdiction. Manifestly some court must determine this jurisdictional fact. It is a rule of universal application that whenever the jurisdiction of a court depends on the existence of a fact, that court has from necessity the included jurisdiction to inquire into such jurisdictional fact. In 1 Freeman on Judgments (5th Ed.), Section 350, it is said:

"By some application or pleading, facts and circumstances are presented to the court upon the existence of which its right to undertake a determination of the case depends. Without the allegation and proof of such facts it could not rightfully proceed to adjudicate

the matter involved. If the circumstances which give rise to the jurisdiction do not exist in a particular case the authority to act does not arise. But the question as to whether or not they do in fact exist is a matter primarily for the court whose powers are invoked, and it has jurisdiction to examine and determine whether the particular application is within or beyond its authority. Its decision in this respect is itself the exercise of a power conferred by the pleading or other act invoking its jurisdiction, and if such decision is incorrect, whether because of lack of evidence or for any other reason, it is none the less binding upon the parties unless and until set aside on appeal or by some other proceeding for that purpose. For jurisdiction to decide includes power to decide erroneously and to make the decision binding collaterally. It is enough in such cases that there be something of record which shows the subject matter before the court and its action upon it, that its judicial power arose and was exercised by a definite order or judgment.''

If the United States District Court should err in its decision upon the existence of the jurisdictional fact, the remedy is by way of appeal to the higher federal courts. Should the Supreme Court of the United States decide that these fixtures were real estate, then the jurisdictional fact would be conclusively established beyond controversy in any other state or federal court. *State, ex rel. Faber, Receiver,* v. *Jones,* 95 Ohio St., 357, at 366, 116 N. E., 456.

In this case the issue between the state court and the federal court is raised in the state court at a time when both are assuming to exercise jurisdiction over the same subject-matter. In the absence of this conflict, both the state and the nation have jurisdiction. If the national agencies actually exercise such authority, the state authority must yield, otherwise conflict and chaos would ensue.

This case is unlike those in which the issue is raised in the United States courts. Those courts may and frequently do on the principle of comity yield jurisdiction to a state court that had already assumed jurisdiction over the subject-matter. *Straton* v. *New,* 283 U. S., 318, 75 L. Ed., 1040, 51 S. Ct., 465, is of this class. The United States court asserted its jurisdiction and then yielded it to the state court, which had previously assumed jurisdiction over the subject-matter. We regard such cases as entirely inapplicable to this case.

For the reasons that no power has been conferred upon the Court of Common Pleas to entertain such a proceeding under any circumstances, and for the further reason that Congress in the exercise of its paramount authority over bankruptcy had conferred jurisdiction upon the United States District Court as to the real estate of the bankrupt, and that court had assumed such jurisdiction in a case between these same parties before any attempt was made in the case at bar to invoke jurisdiction to determine that issue, the order of the Common Pleas Court is reversed, and this cause remanded with instructions to dismiss the proceeding in which the order was made.

*Judgment reversed and cause remanded.*

Ross, P. J., and HAMILTON, J., concur.